IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 1:11cr7-MHT |
| PATRICIA ERVIN | ) | (WO) |

## VARIANCE OPINION

Defendants Patricia Ervin and Monty Ervin were convicted of tax evasion and conspiracy to defraud the United States, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 371, and Patricia Ervin was separately convicted of structuring to evade a currency-transaction reporting requirement, in violation of 31 U.S.C. § 5324(a)(3). At sentencing in open court, the court granted Patricia Ervin's motion for variance. The applicable guidelines range called for a sentence between 63 and 78 months' imprisonment. This court ultimately sentenced her to a five-year probationary term and required, as a special condition of probation,

that she serve 40 consecutive weekends of incarceration. This writing memorializes the court's findings, made in open court, justifying that variance.

1. Monty Ervin's Dominance

- From Patricia Ervin's testimony today and at trial, it is clear that this is an atypical case and that she and Monty Ervin had an atypical criminal relationship. The court considers each case on its own bottom and the relationship between Monty Ervin and Patricia Ervin in this joint criminal endeavor is nearly unique in the amount of control he had over her.

- To understand the extent of his control, it is important to understand the beginnings of their relationship. When Patricia Ervin met Monty Ervin, she had two children and was struggling to make ends meet. Monty Ervin provided her with financial stability. That stability, however, came at a price. In order to remain secure, Patricia Ervin

abdicated all authority and all decision making to Monty Ervin. She was willing to make that trade because, as she testified, she saw her role as being a good mother and she believed that listening to and caring for her family was "what wives do for their husbands." Her primary motivation during the course of the conspiracy was not to accomplish the illegal ends of the fraudulent scheme, but rather to ensure stability and security for herself and her children.

- It was only when that stability started to wane, and the IRS audited the Ervins, that Patricia Ervin had the strength to try to dissociate herself from Monty. She gave him an ultimatum: "resolve this problem with the government or I am leaving." When Monty Ervin refused to cooperate with the audit and insisted on putting their family at risk, Patricia Ervin moved out of his house and into a trailer home. This supports the court's finding that

Patricia Ervin lacked control over the scheme itself and was concerned primarily with the security of her family.

- It is important to note that the court finds that Monty Ervin's control over Patricia Ervin was extreme and far outside of the typical criminal case, involving two or more criminal cohorts, this court has encountered. Patricia Ervin could make no independent decisions: Monty Ervin dictated what she could buy and how she could act; when it came to operating the business, she could do nothing without his approval. (The court emphasizes that it is not focused on the nature of the Ervins' marital relationship in general, or the nature of marital relationships in society in general (nor is the court making any generalizations about the nature of marital relationships in society in general), but rather the court's focus is on nature

of the Ervins' distinct roles in their criminal endeavor here.)

- Monty Ervin did this by exerting emotional dominance over her. The court notes that Patricia Ervin testified that Monty Ervin was not <u>physically abusive</u>. The clear import from that testimony, and what has been evident this entire time, is that he <u>was emotionally dominant</u>. When there was a disagreement, Patricia Ervin simply walked away in order to maintain, as she put it, peace in the house. Indeed, she walked away because her security, and the security of her children, depended on her deference. Driven by her understanding of her role as a wife and her need to keep her family intact, Patricia Ervin gave way to Monty Ervin's dominance. Her subservience to him as a criminal cohort is not otherwise taken into account by the guidelines.

- To be clear, the court is not finding that Patricia Ervin was not culpable: the jury has already determined her culpability and the court believes that she knew what was going on. What the court finds, however, is that the level of emotional dominance was so high that Patricia Ervin felt that she had no real choice but to go along with it. To do otherwise would have put her family at risk.
- The court also recognizes that, while Monty Ervin's dominance over Patricia Ervin requires a sentence below the guidelines range, that same dominance requires Monty Ervin to be treated more harshly, for he brought Patricia Ervin into this illegal scheme and kept her there. A just punishment under 18 U.S.C. § 3553(a)(2)(A) would therefore have to take into account both her extreme subservience and his dominance.

2. Specific Deterrence

- Having watched Patricia Ervin on the stand and assessed her role in the crime, and taking into account that this is her first offense and that she has a clear commitment to working for a living, the court finds that there is no appreciable chance of recidivism. That point has been driven home over the past couple of months when Patricia Ervin has continued to work tirelessly to keep the business afloat. Indeed, without that effort, there is no doubt that the entire business would have fallen apart. This is important because it is only through the sale of that business's assets that the victim in this case, the United States, can be made whole again. Indeed, Patricia Ervin has demonstrated her commitment to making amends for the wrongs she committed by moving forward with a plan to sell some of the business's assets, likely at a loss, in order to cover restitution.

Furthermore, she has kept the business afloat to ensure that she can pay whatever additional money is due the government. In effect, Patricia Ervin has demonstrated her commitment to living a life within the bounds of the law, and the court finds that no significant period of incarceration is required in order to ensure her future compliance with the law.

3. General Deterrence

- There will be no increased general deterrence from a prison sentence because it is clear from the testimony that it is Monty Ervin, the self-proclaimed "governor of Alabama," who is a leader in the Sovereign Citizens movement. It is his sentence that will send a message to those who would try to avoid their income taxes through participation in the tax-protester movement. Patricia Ervin, on the other hand, lacks any

visible role in the community or any real connection to people outside her immediate family. There will therefore be no appreciable benefit to general deterrence by a long prison sentence for her.

4. Family Ties and Responsibilities

- Patricia Ervin is currently serving as caretaker for her sick daughter (who is having recurring bouts with cancer) and grandchildren. From the testimony last week, it appears that her daughter's husband works full-time and does not provide the kind of at-home care her daughter and grandchildren need. Taking into account all of the factors identified in U.S.S.G. § 5H1.6, the court believes that the best and only way to ensure the continued adequate care of her daughter and grandchildren is to order a sentence of probation with weekend incarceration. This will be in the best interest

of the community as it will ensure proper care for her daughter and grandchildren.

***

In conclusion, the court finds that any harsher sentence would be greater than necessary to comply the purposes set forth in 18 U.S.C. § 3553 and that the sentence imposed complies fully with all the factors set forth § 3553.

DONE, this the 30th day of May, 2012.

    /s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**